## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> INGPROYET AVIATION, LLC, ) <br> ) <br> Defendant. ) <br> _____) | Civil Case No. _____ |

### COMPLAINT FOR DAMAGES

The United States of America, by and through the United States Attorney for the Southern District of Florida, alleges as follows:

### NATURE OF THE CASE

1. This is an action for recovery of civil money penalties under the Federal Aviation Reauthorization Act of 2018, 49 U.S.C. § 40101 *et. seq.* (the "Act"). The Act imposes civil penalties on persons who commit prohibited acts specified in section 44713. 49 U.S.C. § 46301(a).

### JURISDICTION AND VENUE

2. Pursuant to 49 U.S.C. §§ 46301(d)(4) and 46305 and 28 U.S.C. § 1345, the district courts of the United States have original jurisdiction over actions to recover and enforce penalties under the Act.

3. Venue of this action is appropriate in the Southern District of Florida pursuant to 28 U.S.C. § 1395(a) because the penalties accrued in this district and the Defendant is found in this district.

## PARTIES

4. Plaintiff is the United States of America ("United States").

5. Defendant Ingproyet Aviaiton, LLC ("Defendant" or "Ingproyet"), is an  is a limited liability corporation registered in Florida.  At all times relevant to this matter, Defendant's registered business address was 14950 NW 44th Court, Unit 23, Opa-locka, Florida, 33054.

## STATUTORY BACKGROUND

6. The Federal Aviaiton Administration ("FAA") regulates the safety of "civil aircraft in air commerce."  49 U.S.C. § 44701(a).  The Act defines "air commerce" as foreign or interstate "transportation of passengers or property by aircraft for compensation," or "the operation of aircraft that directly affects, or may endanger safety in, foreign or interstate air commerce."  *See id.* §§ 40102(a)(3), (22), (24).  Under the Act, the FAA issues Federal Aviation Regulations ("FARs") governing such "air commerce."  *Id.* § 44701(a)(2).

7. As defined by FAR Part 1, to "operate, with respect to an acraft" means to "use or cause to use or authorize to use aircraft, for the purpose. . . of air navigation including the piloting of aircraft, witho or without the right of legal control (as owner, lessee, or otherwise)."  14 C.F.R. § 1.1.

8. A "commercial operation" under the FAR is "a person who, for compensation or hire, engages in the carriage by aircraft in air commerce of persons or proerty."  *Id.*  Commercial operations are, in turn, governed by FAR Parts 119 and 135, which provide the certification and operating requirements for commercial operators, respectively.  All persons operating or intending

to operate a civil aircraft as a commercial operator in air commerce are required to hold the appropriate air carrier certificate, operating certificate or operations specifications issued by the FAA. *See* 14 C.F.R. §§ 119.5(g) ("No person may operate as a direct air carrier or as a commercial operator without, or in violation of, an appropriate certificate and appropriate operations specifications."); 119.5(k) ("No person may advertise or otherwise offer to perform an operation subject to this part unless that person is authorized by the Federal Aviation Administration to conduct that operation."); 119.33(b) (Prohibiting persons from performing cargo aircraft operation under FAR 135 unless that person "(1) [i]s a citizen of the United States; (2) [o]btains an Operating Certificate; and (3) [o]btains operations specifications that prescribe the authorizations, limitations, and procedures under which each kind of operation must be conducted.")

9. Commerical operators "engaged in intrastate common carriage of persons or property for compensation or his in air commerce," *id.* §119.21(a), commonly known as "charter flight" operators, are also subject to the heightened operations standard enumerated in FAR Part 135. *Id.* § 119.21(a)(5) (requiring commercial operators to conduct their "[o]n-demand operations in accordance with the applicable requirements of part 135 of this chapter, and shall be issued operations specifications for those operations in accordance with those requirements").

10. Under FAR Part 135, commercial operators are required to comply with specific operating requirements concerning pilot training and certification, aircraft maintenance procedures, and heightened operational safety rules including with respect to the transportation of hazardous materials. *See generally*, 14 C.F.R. Part 135, subparts A through K (listing safety standards for Part 135 operators).

11. The requirements of FAR Part 135 apply to all persons that perform operations governed by that Part, regardless of whether the operator obtained the required certificate issued pursuant to FAR Part 119.  *See* 14 C.F.R. § 135.7.

## ALLEGATIONS

**A.  Ingproyet Engaged in Commercial Operations in Violation of FAR Parts 1109 and 135.**

12. At no time relevant to this matter did Ingproyet hold an air carrier certificate, operating certificate or operations specifications issued by the FAA pursuant to FAR Part 119 that would permit it to provide services and perform operations subject to FAR Parts 119 and 135.

13. On approximately October 31, 2017, Ingproyet, through its principle, Fernando Tabaoda, met with Faustino "Benny" Benitez, a consultant for Humes McCoy Aviation, Inc. ("HMA").

14. Upon information and belief, at that meeting, Ingproyet agreed to provide HMA with an aircraft and crew to fly certain cargo routes under a contract between HMA and UPS.

15. Between December 6, 2017 to December 23, 2017, Ingproyet transported cargo for HMA by operating a N250NC, a Beechcraft Super King Air B200C, on a series of fifteen (15) flights between KCAE (Columbia Metropolitan Airport, South Carolina) and KARW (Beaufort County Airport, South Carolina).

16. Each of the flights indentified in Paragraph 15 were for the purpose of transporting cargo by air and therefore subject to the requirements of FAR Parts 119 and 135.

17. At no times relevant to this matter did Ingproyet hold an air carrier certificate, operating certificate or operations specifications issued by the FAA pursuant to FAR Part 119.5(g), 119.5(k), or 119.33(b), as required to transport the cargo identified in paragraph 16.

18. At no time relevant to this matter did Ingproyet employ pilots qualified to transport the cargo identified in Paragraph 15, as required by FAR Parts 135.293(a), 135.293(b), 135.299(a).

19. For the flights desrcribed in Paragraph 15, Defendants employed Elio Santos and Roger Fernandez as the flight crew.

20. At no time relevant to this matter was Elio Santos or Roger Fernandez qualified to transport the cargo identified in Paragraph 15, as required by FAR Parts 135.293(a), 135.293(b), 135.299(a).

**B. Demand for Payment of Civil Penalty**

21. Consistent with FAA Order 215.3B, the FAA calculated a civil penalty of $11,000 per flight for Ingproyet's violations of FAR in connection with its operation of the cargo flights identified in Paragraph 15.

22. On July 24, 2019, the FAA sent Ingproyet a letter detailing its claims and provided 30 days for Ingproyet to remit payment of $264,000 in settlement of the matter or to furnish additional information pursuant to procedures described in the letter.[1]

23. On November 5, 2019, an informal conference was held between the FAA and Ingproyet. The parties were unable to resolve the matter.

### COUNT 1
(Claim for Collection of a Civil Penalty)

24. Plaintiff United States incorporates and re-alleges herein every allegation set forth in paragraphs 1 through 25.

25. Defendant Ingproyet owes the United States a civil penalty in the amount of $165,000 pursuant to 49 U.S.C. § 46301(a)(5).

26. Through this action, Plaintiff United States demands payment from Defendant Ingproyet in a civil penalty amount of $165,000.

---

[1] The demand for $264,000 included civil penalties for nine additional flights that occurred before December 6, 2017.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff United States respectfully requests that the Court order the following relief:

A. Judgment be entered in favor of the United States and against Defendant HMA for the civil penalty amount of $165,000, plus post judgment interest, and

B. Such further and other relief as the Court deems just and proper.

Dated:  December 6, 2022              Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　JUAN ANTONIO GONZALEZ
　　　　　　　　　　　　　　　　　　　United States Attorney
　　　　　　　　　　　　　　　　　　　Southern District of Florida

　　　　　　　　　　　　　　　　By:  *Rosaline Chan*
　　　　　　　　　　　　　　　　　　　ROSALINE CHAN
　　　　　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　　　　　Fla. Bar No. 1008816
　　　　　　　　　　　　　　　　　　　United States Attorney's Office
　　　　　　　　　　　　　　　　　　　99 N.E. 4th Street
　　　　　　　　　　　　　　　　　　　Miami, Florida 33132
　　　　　　　　　　　　　　　　　　　Telephone: (305) 961-9335
　　　　　　　　　　　　　　　　　　　Facsimile: (305) 530-7139
　　　　　　　　　　　　　　　　　　　Email: Rosaline.Chan@usdoj.gov